## ENSLEY BANK & TRUST CO. v. UNITED STATES.

No. 5171.

District Court, N. D. Alabama, S. D.

April 17, 1945.

L. C. Bradley, of Birmingham, Ala., for plaintiff.

Jim C. Smith, U. S. Atty., and William H. Burton, Jr., Asst. U. S. Atty., both of Birmingham, Ala., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Homer R. Miller, Sp. Assts. to Atty. Gen., for defendant.

MULLINS, District Judge.

This cause came on to be tried upon the facts by this Court without a jury and up-

318

on consideration and pursuant to Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the Court finds the facts specially and states its conclusions of law thereon with direction for the entry of the appropriate judgment as set forth below:

### Findings of Fact

1. This is a civil action under the Tucker Act by Ensley Bank & Trust Company, a dissolved corporation, against the United States for the recovery of $4,587.65, plus interest, federal income and excess profits taxes for the years 1933 and 1934.

2. Plaintiff was duly incorporated under the laws of Alabama, as the Bank of Alabama, on August 14, 1906, for the purposes of engaging in the General banking business in the Ensley District of Birmingham, Alabama. The banks in that district depended largely on the steel business and suffered seriously from the 1929 depression. As a result of this situation the Bank of Alabama was compelled to discontinue its operations and began liquidating its affairs in 1930. In December, 1930, the Bank of Alabama sold its assets to the Ensley National Bank of Birmingham Alabama, the Ensley National Bank assuming the liabilities of said Bank of Alabama.

3. In 1932, on account of further adverse conditions it became apparent the Ensley National Bank could no longer safely conduct a banking business and its business and affairs were liquidated in the following manner:

The Ensley National Bank obtained authority from its stockholders for a voluntary liquidation of its affairs. On July 16, 1932, the First National Company of Birmingham, Alabama, an affiliate of the First National Bank, Birmingham, Alabama, and Birmingham Trust and Savings Company organized the Western Holding Company, Inc., and loaned money to that corporation with which money Western Holding Company, Inc., purchased all except the directors' qualifying shares of stock of the Bank of Alabama. On July 18, 1932, the Ensley National Bank by written contract appointed the Bank of Alabama as its liquidating agent or trustee. On October 4, 1932, the name of the Bank of Alabama was changed to Ensley Bank & Trust Company. The Bank of Alabama continued as a legal corporation under the name of the Bank of Alabama and Ensley Bank & Trust Company (hereinafter called plaintiff) from August 14, 1906, to September 30, 1935. On September 30, 1935, plaintiff was duly dissolved under and pursuant to the laws of Alabama. Plaintiff existed as a legal corporation from September 30, 1935, to September 30, 1940, under the provisions of Section 7069, Code of Alabama 1923, Code 1940, Tit. 10, § 110, and pursuant to a decree entered in the Circuit Court of Jefferson County, Alabama, on May 17, 1940, and pursuant to Section 7069, Code of Alabama 1923, plaintiff's corporate existence was extended for a period of five years from September 30, 1940. During all times mentioned herein the principal place of business of the plaintiff was located at Birmingham, Jefferson County, Alabama.

4. From and after July 19, 1932, and throughout the years 1933 and 1934, and subsequent thereto, plaintiff engaged in the general banking business in that part of the City of Birmingham, Alabama, known as Ensley. The First National Bank of Birmingham, and the Birmingham Trust & Savings Bank were both engaged in the general banking business in the downtown section of Birmingham, Alabama. The First National Company of Birmingham, an affiliate of the First National Bank of Birmingham, and the Birmingham Trust & Savings Bank in an effort to save the banking business in Birmingham from the catastrophe anticipated on account of the failure of the Ensley National Bank caused and induced the plaintiff to enter into and execute with said Ensley National Bank on July 18, 1932, a written contract. On February 1, 1933, plaintiff and Ensley National Bank executed a completed contract.

5. The contract between plaintiff and Ensley National Bank contained the following pertinent provisions effective as at the beginning of business on June 19, 1932. Ensley National Bank appointed plaintiff as its liquidating agent, plaintiff agreeing to assume and pay off and discharge on demand all of the debts, liabilities, commitments and obligations of National Bank, direct or contingent with certain specified exceptions not here material. The National Bank agreed to pay plaintiff the amounts of liabilities, indebtedness, commitments and obligations of said Ensley National Bank "hereby or hereafter" assumed by plaintiff and in addition to pay plaintiff as compensation for its services under the contract or as interest on the amount of the indebtedness (at the election of plaintiff from time to time) an amount equal to

8% per annum on the amount of the indebtedness from the effective date of the agreement. As additional compensation plaintiff was to receive an amount equivalent to one per cent on amounts not assumed which was to be paid on account of services in effecting renewals or extensions or otherwise dealing with pledged property. Plaintiff was also to receive reimbursement for its expenses, court costs and other expenses of the liquidation. The amounts of compensation or interest would be computed on the average daily balance of liabilities of Ensley National Bank not discharged by realization out of assets or property of said Ensley National Bank and were payable monthly from the first proceeds received out of such assets or property or at the option of plaintiff could be added to the liability of Ensley National Bank to plaintiff under the contract.

The obligation of Ensley National Bank to plaintiff was to mature upon demand by plaintiff after two years of the effective date of the contract, the right being reserved to plaintiff to call on Ensley National Bank for payment when that was deemed necessary in order that suits against stockholders could be filed within the period of the statutes of limitations. Under the contract Ensley National Bank sold, assigned, transferred and set over to plaintiff its good will and banking business without consideration therefor except the execution of the original and completed contract and the commencement of the performance of duties devolved upon plaintiff under the contract. The cash and cash items were assigned to plaintiff for its use in discharging the liabilities of Ensley National Bank. The obligation of Ensley National Bank to plaintiff under the contract was secured by the transfer, conveyance, mortgage, pledge or hypothecation to plaintiff of all the assets, business and property of Ensley National Bank except the corporate franchise of Ensley National Bank and membership in the Federal Reserve System. Only cash transferred to plaintiff or realized out of the assets and property was to be considered as being in payment or discharge of the obligation arising from Ensley National Bank to plaintiff and all other transfers, conveyances, mortgages and pledges were deemed to be executed and accepted as security only for the indebtedness of Ensley National Bank to plaintiff. Plaintiff was to proceed with the liquidation as promptly as possible and apply the net proceeds of collection, etc., upon the indebtedness of Ensley National Bank to plaintiff. Plaintiff was given broad powers in compromising claims owing Ensley National Bank making renewals, renewing obligations or substituting securities where these amounts did not involve over $500 in which case written consent of certain specified officers of Ensley National Bank was required. It was agreed that within 90 days of July 19, 1934, or the period extended by agreement of the parties, a final settlement in accounting would be made in which plaintiff would be charged with all payments and applications made upon or with respect to the assets or property of Ensley National Bank and credited with assumed liabilities as disclosed at the time of settlement and other payments made, including taxes, interest, compensation paid under the contract and expenses of liquidation specially incurred as provided in the contract. If the charges exceeded the credits plaintiff was to transfer all remaining assets to Ensley National Bank. If the credits exceeded the charges then Ensley National Bank was bound to pay the difference. If it could not do so all remaining assets should be foreclosed and sold.

6. In accordance with the terms of the aforesaid contracts, plaintiff proceeded to liquidate the Ensley National Bank. Through said contracts referred to in Paragraph 4 above, plaintiff acquired all of the assets and business of the Ensley National Bank including good will and thereupon and thereafter became the sole and dominant factor in the banking business in the Ensley locality.

7. An examination and report on the affairs of the Ensley National Bank was made by J. A. Hand, vice president, First National Bank of Birmingham, as of July 18, 1932. The report and examination indicated that (without considering good will items) Ensley National Bank was insolvent at that time. There was at that time $200,000 face value outstanding bank stock of Ensley National Bank but the value of claims against the stockholders for double liability was not appraised at that time.

8. In 1930 the deposits of Ensley National Bank were about $450,000, and were increased to $1,250,000 in said year when said bank took over the Bank of Alabama. In July, 1932, the deposits were about $375,000, and in said year they dropped to a new

low of $270,000. Pursuant to said contract, Ensley National Bank gave plaintiff its note as of July 19, 1932, for $355,080.63. Said note shows that the principal amount was paid down to $302,229.44, the last credit being made June 1, 1933. Proceedings were not started against the stockholders of Ensley National Bank until after July 18, 1934. In 1934, about $35,000 was collected from the stockholders and a little less than $50,000 was collected altogether, the balance being collected after the year 1934.

9. On August 26, 1935, plaintiff entered into a written contract with the First National Bank of Birmingham, Alabama, under which plaintiff sold to said First National Bank all of its assets with certain specified exceptions not here material. Under the contract First National Bank of Birmingham assumed and agreed to pay all deposit liabilities not in excess of $611,-336.87, and to pay plaintiff certain specified cash for retirement of certain preferred stock. The contract specified that claims against stockholders of Ensley National Bank were excepted from said sale, plaintiff being obliged to pursue these claims and pay over any recoveries to the First National Bank of Birmingham as trustee. The First National Bank of Birmingham as trustee agreed that it would liquidate all of the assets for the benefit of plaintiff's creditors and stockholders. Included in the assets transferred to the First National Bank of Birmingham under the contract was the good will of plaintiff.

10. During all years here involved plaintiff kept its books and filed its federal income and excess profits tax returns on the calendar year and cash receipts and disbursements bases.

11. On March 15, 1934, plaintiff filed with the Collector of Internal Revenue, Birmingham, Alabama, a corporation income and excess profits tax return for the calendar year 1933, disclosing a total gross income of $37,090.61 (which included service charges of $24,721.47, received under the contracts) total deductions of $38,853.-09 (including a claimed deduction of $13,-039.03 for partial worthlessness of debts) and a net loss of $1,762.48.

12. On March 15, 1935, plaintiff filed with the aforesaid Collector of Internal Revenue, Birmingham, Alabama, a corporation income and excess profits tax return for the calendar year 1934, disclosing total gross income of $32,605.20 (including service charges of $16,175.90, received under the terms of the contracts) total deductions of $42,435.19 (including a claimed deduction of $14,318.03 for partial worthlessness of debts), and a net loss of $9,829.99.

13. On September 10, 1936, the Commissioner of Internal Revenue forwarded to plaintiff a deficiency letter covering the years 1933 and 1934. The letter proposed the following deficiencies in taxes:

|  | 1933 | 1934 |
|---|---|---|
| Income tax | $1,584.31 | $1,798.17 |
| Excess profits tax | 26.11 | 653.88 |
| Totals | $1,610.42 | $2,452.05 |

The deficiency in tax for 1933 was the result inter alia of increasing the aforesaid service charges from $24,721.47 to $24,-985.47, and disallowance of a claimed bad debt deduction of $13,039.03. The deficiency in tax for 1934 was the result inter alia of increasing the aforesaid service charges from $16.175.90 to $24,667.61 and disallowing a claimed bad debt deduction of $14,318.03.

14. The proposed deficiences referred to in Paragraph 13 were duly assessed by the Commissioner of Internal Revenue against plaintiff and were paid by plaintiff on December 30, 1936, to Harwell G. Davis, then United States Collector of Internal Revenue for the District of Alabama. These payments were as follows:

| 1933 | $1,610.42 |
|---|---|
| Plus interest | 266.51 |
| Total | $1,876.93 |
| 1934 | $2,452.05 |
| Plus interest | 258 67 |
| Total | $2,710.72 |

Said Harwell G. Davis is not now and was not at the date of commencement of this suit in office as United States Collector of Internal Revenue. The amounts paid by plaintiff as aforesaid were duly covered into the Treasury of the United States by the Collector of Internal Revenue.

15. On November 21, 1938, within the time fixed by law plaintiff filed with the Collector of Internal Revenue, Birmingham, Alabama, a claim for refund of federal income and excess profits taxes paid for the year 1933. On June 28, 1940, the Commissioner of Internal Revenue mailed

a letter to plaintiff by registered mail notifying plaintiff that said claim for refund had been rejected in toto.

16. On November 21, 1938, plaintiff also filed with the Collector of Internal Revenue at Birmingham, Alabama, a claim for refund of federal income and excess profits taxes paid for the year 1934. Later at the request of the Commissioner of Internal Revenue plaintiff submitted additional data in support of said claim. On June 28, 1940, the Commissioner of Internal Revenue mailed a letter to plaintiff by registered mail notifying plaintiff that its claim for refund had been rejected in toto.

17. The pleadings in this case and the claims for refund properly present for this Court's determination the following questions:

A. Whether sums actually received, collected and credited by plaintiff as compensation or interest under the written contract with Ensley National Bank and pursuant to the terms thereof, constitute gross income to plaintiff in the years in which said sums were collected, received and credited.

B. Whether the sum of $264, which was part of the sum due as compensation or interest under the contract in and for the year 1933, which was admittedly available as compensation or interest, but which was not credited during the year 1933, through plaintiff's inadvertence, constituted gross income to plaintiff in the year 1933.

C. Whether the sum of $8,491.71, which plaintiff was entitled to receive under the contract in and for the year 1934, and which plaintiff did not credit to itself as compensation or interest but exercised its election under the contract to have said sum applied upon liabilities which plaintiff assumed under the contract, constituted taxable income to plaintiff in the year 1934.

D. Whether plaintiff is entitled to deductions for 1933 and 1934 as partial bad debts the respective sums of $13,039.03 and $14,318.03. The claims for refund as filed by plaintiff herein and as rejected by the Commissioner of Internal Revenue did not present either to the Commissioner or this Court any question as to whether plaintiff was entitled to losses under Section 23(f), Revenue Acts 1932 and 1934, 26 U.S.C.A. Int.Rev.Acts, pages 490, 672, or for ordinary and necessary business expenses under Section 23(a), Revenue Acts of 1932 and 1934, 26 U.S.C.A. Int.Rev.Acts, pages 489, 671, on account of said sums set forth in D or any parts thereof.

The claims for refund were filed within the time prescribed by law and this action was timely instituted within two years from the date the Commissioner notified plaintiff of the rejection of the claims for refund by registered mail.

18. During the year 1933, plaintiff credited on its books as compensation or interest received from the Ensley National Bank the sum of $24,721.47. Pursuant to the terms of the contracts referred to plaintiff was entitled to receive as interest or compensation from said Ensley National Bank for 1933, the sum of $24,985.47. However plaintiff through inadvertence neglected to record the receipt of $264 of said amount at any time during the year 1933 and it was not paid or accrued on plaintiff's books during said year. This is 8% on $3,300 of indebtedness due by Ensley National Bank charged off by plaintiff at the end of 1932 and excluded in the calculation of interest until 1934. It was included in the amount demanded of Ensley National Bank as set forth above. During the year 1933, plaintiff received income from other sources aggregating $12,369.14. Plaintiff reported the sums of $24,721.47 and $12,369.14 as gross income for 1933. For the year 1933, plaintiff was entitled to and has been allowed by the Commissioner of Internal Revenue deductions for depreciation, compensation of its officers, salaries and wages, rents paid, interest paid, taxes paid and miscellaneous expenses in the aggregate amount of $25,836.56. Plaintiff contends that it is entitled to deduct certain alleged partially worthless indebtedness due and owing the Ensley National Bank which alleged indebtedness was taken over by plaintiff under the contracts. The aggregate amount claimed as a deduction is $13,039.03. In its return for 1933, plaintiff claimed a deduction for $13,039.03 in addition to other deductions herein above set out. Said claimed deduction has been disallowed by the Commissioner of Internal Revenue.

19. During the year 1933, plaintiff realized from assets pledged to it by the Ensley National Bank the total sum of $87,271.16. Of said sum $74,578.78, represented gross amounts received by plaintiff through liquidation and collection of the principal amount of indebtedness due and

owing the Ensley National Bank and assigned to plaintiff and the sum of $12,-692.38, represented the gross amount of interest and other earnings by said assets which was collected by plaintiff. During 1933, plaintiff incurred expenses in maintaining said assets and making collections in the amount of $2,454.29. During the year 1933, plaintiff paid to the Reconstruction Finance Corporation and the Federal Reserve Bank of Atlanta, Georgia, the sum of $3,028 interest and $30,745.16 principal on claims held by the institutions against the Ensley National Bank which claims were secured by a prior lien on some of the assets from which the sums above referred to were realized.

20. Up to July 18, 1934, plaintiff regularly credited on its books as compensation or interest received from the Ensley National Bank the sums from time to time accrued as due therefor under the contracts. After July 18, 1934, plaintiff generally did not credit on its books as received from the Ensley National Bank the sums accruing for compensation or interest under said contracts but instead applied the net amounts to which it would be entitled as compensation or interest upon the principal claims under said contracts. During said year 1934, plaintiff credited on its books as compensation or interest received from Ensley National Bank only the sum of $16,-175.90, although the total amount to which it was entitled under said contract was $26,-757.33. Plaintiff did not in 1934, and has not at any subsequent time, credited on its books as interest or compensation received the remaining sum of $10,581.43. During said year 1934, plaintiff received income from other sources amounting to $16,970.48. The plaintiff reported as gross income the sum of $16,175.90 credited on its books as compensation or interest as aforesaid and the further sum of $16,429.30. It did not include in its gross income the sum of $10,-581.43, to which it was entitled as compensation or interest for the year 1934, but which was not credited on its books as received as stated aforesaid. Through inadvertence and mistake plaintiff failed to report the sum of $541.18 which it received as income from other sources during the year 1934. For the year 1934, plaintiff was entitled to and has been allowed by the Commissioner of Internal Revenue deductions for depreciation, interest, compensation to officers, rent, taxes, salaries and wages, and miscellaneous expenses, and loss on the sale of bonds in the aggregate amount of $42,878.50.

Plaintiff also claimed a deduction on account of alleged worthless accounts and debts assigned to plaintiff by the Ensley National Bank as aforesaid in the aggregate amount of $14,318.03. The Commissioner of Internal Revenue has disallowed said claimed deduction.

21. During the year 1934, plaintiff realized from the assets pledged to it by the Ensley National Bank the sum of $73,-811.51. Of said sum $67,793.87 represented the gross amount received by the plaintiff through the conversion of the principal of the assets received from said Ensley National Bank into cash either by sale, collection or otherwise, while the sum of $6,-017.64 represented interest and other gross earnings from said assets which was collected by the plaintiff. During the year 1934, the plaintiff incurred expenses in maintaining said assets and in collecting said sums from said assets in the aggregate amount of $2,078.07. During the same year the plaintiff paid to the Reconstruction Finance Company and to the Federal Reserve Bank of Atlanta, the sum of $71,-486.80 as principal, and $972.07 as interest, on indebtedness owing by the Ensley National Bank to said institutions which indebtedness was secured by a prior lien on some of the assets from which the gross amounts above-mentioned were realized.

22. Under the contract the plaintiff was entitled to compensation or interest for the months of October, November and December, 1934, in the amount of $6,585.27. Said amount exceeded the total gross amount collected from the pledged assets by the sum of $2,089.72. Said last-mentioned sum is a part of the sum of $10,581.43, above referred to, which plaintiff voluntarily did not credit on its books as compensation or interest received from the Ensley National Bank in 1934. Of said sum of $10,581.43, the said sum of $2,089.72 has not been included in plaintiff's gross income from the year 1934. The remaining sum of $8,491.71 for the payment of which the total proceeds of collections made on account of pledged assets was sufficient but which the plaintiff voluntarily failed to credit on its books as compensation or interest received was included in plaintiff's gross income by the Commissioner of Internal Revenue.

23. Pursuant to the contracts plaintiff on August 12, 1934, made a demand on the Ensley National Bank for payment of the

entire balance of its principal claim as shown by an accounting then made. The National Bank failed to make said payment and the plaintiff therefore retained possession of and continued to liquidate the pledged assets. Since said date plaintiff or its assigns have liquidated substantially all of the assets pledged by the Ensley National Bank. Plaintiff has taken steps to make collections from stockholders of the Ensley National Bank · for amounts due from them pursuant to the laws of Alabama. The proceedings against the stockholders continued into the years subsequent to 1934 and were terminated in years subsequent to 1934. Substantially all of the amounts that can be collected from said stockholders have now been collected. The total amounts collected through liquidation and proceedings against the stockholders are less than the principal amount of the Ensley National Bank debts assumed even if no part of such amounts should be applied to payment of plaintiff's claim for compensation or interest.

24. The evidence offered is insufficient to show the amount of value, if any, which attached to the name, reputation, location, depositors' lists, and other good will items of Ensley National Bank in the years 1932, 1933, or 1934. Moreover, the value of good will during said years is immaterial.

25. Plaintiff made a demand and claim upon Ensley National Bank for payment of its note of $355,080.63, as reduced by credits in accordance with the terms of the contract with Ensley National Bank, on or about August 12, 1934. No demand or claim was made by plaintiff against Ensley National Bank under said contract prior to said date.

26. On July 18, 1932, and during all the balance of the year 1932, the responsible officers and officials of plaintiff and the First National Bank of Birmingham knew or should have known that plaintiff would realize a loss on transactions covered by the contract between plaintiff and Ensley National Bank, in so far as all items of the contract were concerned with the exception of good will items.

27. The identifiable event from which gain or loss was determinable under the transactions between plaintiff and Ensley National Bank was the purchase of the assets of plaintiff (which included the assets taken over by plaintiff from Ensley National Bank) which event occurred on August 26, 1935. There is no competent evidence from which this Court can determine the amount of loss sustained by plaintiff in the year 1935. In any event the year 1935 is not involved in this action and consequently the amount of loss if any which plaintiff sustained in that year is immaterial and not within the issues in this case.

## Conclusions of Law

1. The sum of $24,721.47 was earned, received and credited by plaintiff in 1933 as compensation or interest and constituted gross income to plaintiff in the year 1933, within the provisions of Section 22(a), Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 487, and was properly treated as gross income for said year by the Commissioner of Internal Revenue.

2. The sum of $264 was earned and received by plaintiff as compensation or interest in 1933 since it was available to plaintiff and could have been drawn by plaintiff in said year but was not credited as compensation or interest because of plaintiff's inadvertence. Said sum was therefore gross income to plaintiff in 1933, and properly treated as such by the Commissioner of Internal Revenue in accordance with the provisions of Section 22(a), Revenue Act of 1932.

3. The sum of $16,175.90 was earned and received by plaintiff in 1934, as compensation or interest and credited as such pursuant to the contract with Ensley National Bank. Said sum constituted gross income to plaintiff in said year and was properly treated as such by the Commissioner of Internal Revenue within the provisions of Section 22(a), Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 669.

4. While plaintiff was entitled to receive the sum of $8,491.71, as compensation or interest under the contract in and for the year 1934, plaintiff did not receive said sum. It elected as it was entitled to do under the contract, to have said sum credited on the note which it held against Ensley National Bank. Said sum did not constitute gross income to the plaintiff in 1934, within the provisions of Section 22 (a), Revenue Act of 1934, and the Commissioner of Internal Revenue erroneously included said sum in plaintiff's gross income for said year. In making said credit upon said note plaintiff acted in good faith and in accordance with the terms of the contract and there is no evidence that plain-

tiff's motives were those of tax avoidance or tax evasion.

5. The burden of proof rests upon plaintiff to establish that it is entitled to deductions from gross income and to establish the amounts of deductions allowable and the proper year in which the deductions should be taken. Plaintiff has failed to establish that it is entitled to partial bad debt deductions for 1933 in the amount of $13,039.03, or any other amount within the provisions of Section 23(j), Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 490, or in the amount of $14,318.03, or any other amount for the year 1934, within the provisions of Section 23(k), Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 673.

6. The claims for refund and supplemental data filed by plaintiff for the years 1933 and 1934, claimed deductions only on the ground of partial bad debts and did not advance any claim that plaintiff was entitled to deductions for ordinary and necessary business expenses under Section 23 (a), Revenue Acts of 1932 and 1934, or losses under Section 23(f), Revenue Acts of 1932 and 1934, 26 U.S.C.A. Int.Rev.Acts, pages 490, 672.

7. The allowance of partial bad debt deductions for the years 1933 and 1934 are discretionary with the Commissioner of Internal Revenue and said discretion is only reviewable when the same has been abused. Here the claimed deductions were not allowable. Consequently it cannot be said that the Commissioner abused his discretion in disallowing said deductions.

8. Plaintiff is not entitled to deductions except those allowed by the Commissioner on any theory for either the years 1933 or 1934. The identifiable event from which gain or loss could be determined occurred in 1935 and any loss on the transaction between plaintiff and Ensley National Bank occurred in said year which is not involved in this action.

9. The good will and the business of Ensley National Bank as acquired by plaintiff under the contract was a capital asset. Plaintiff paid for said capital asset the difference between the amount of liabilities assumed and paid under the contract and the amounts realized and collected on liquidation.

10. The Commissioner correctly determined that plaintiff's net income for 1933 was $11,522.26, and correctly assessed the additional income and excess profits taxes for said year involved in this action. Plaintiff did not overpay its income and excess profits taxes for the year 1933.

11. The Commissioner incorrectly determined the amount of plaintiff's net income for 1934. The correct amount of plaintiff's net income for 1934 is $4,585.91, instead of $13,077.62, as determined by the Commissioner. Income and excess profits taxes for 1934 should be determined on the corrected basis. Plaintiff overpaid its income and excess profits taxes for 1934 in the amount of $1,760.15, including assessed interest.

12. Plaintiff is entitled to recover from defendant the sum of $1,760.15, with interest from December 30, 1936, the date of payment as provided by law.

13. Judgment should be entered for plaintiff in the sum of $1,760.15, plus interest from December 30, 1936, as provided by law.

Done this the 17th day of April, 1945.

## Judgment Order

This cause came on regularly to be heard and all issues of fact as well as law were submitted to the Court. The Court, having heard the evidence, considered the briefs and arguments of the parties and being duly advised in the premises, finds for the plaintiff and that plaintiff is entitled to recover from the defendant the sum of $1,760.15, with interest as provided by law.

It is, therefore, ordered and decreed that plaintiff, Ensley Bank & Trust Company, a dissolved corporation, do have and recover from the defendant, United States of America, the sum of $1,760.15, with interest upon said sum at 6% per annum from the date of payment, to-wit, December 30, 1936, to a date preceding the date of the refund check but not more than 30 days, said date to be determined by the Commissioner of Internal Revenue pursuant to the terms and conditions of Title 28, Section 284, U.S.C.A. Section 177, Judicial Code, as amended, and such costs as are taxable against the United States under the provisions of Title 28 U.S.C.A., § 258.

Plaintiff excepts.

Defendant excepts.